1   ADAM K. BULT, ESQ., Nevada Bar No. 9332
    BROWNSTEIN HYATT FARBER SCHRECK, LLP
2   100 North City Parkway, Suite 1600
    Las Vegas, Nevada  89106
3   Telephone:  702.382.2101
    Facsimile:   702.382.8135
4   Email: abult@bhfs.com

5   *Attorneys for Defendants*

6

7

8                  **UNITED STATES DISTRICT COURT**

9                      **DISTRICT OF NEVADA**

10

11  NAT COOPER AND ANN COOPER,          CASE NO.:

12              Plaintiffs,

13  v.                                  **NOTICE OF REMOVAL**

14  OPPENHEIMERFUNDS INC.,
    OPPENHEIMERFUNDS DISTRIBUTOR,
15  INC., AND DOES 1-10 AND ROES 1-10,
    INCLUSIVELY
16
                Defendants.
17

18                    **NOTICE OF REMOVAL**

19          PLEASE TAKE NOTICE that defendants OppenheimerFunds, Inc. ("OFI") and

20  OppenheimerFunds Distributor, Inc. ("OFDI") (collectively "Defendants") hereby remove this

21  action pursuant to 28 U.S.C. §§1332, 1441 and 1446 from the District Court, Clark County,

22  Nevada to the United States District Court for the District of Nevada, Southern Division, and

23  respectfully state as follows:

24          1.      This action was commenced on September 13, 2011, in the Clark County District

25  Court, Nevada, by the filing of a complaint captioned *Nat Cooper and Ann Cooper v.*

26  *OppenheimerFunds, Inc., et al.,* Case A11648214 (the "Action").

27          2.      On October 26, 2011, Defendants received a copy of the Complaint.  A true and

28  correct copy of the Complaint is attached hereto as Exhibit 1.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

3.     This case is properly removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 because: (1) Defendants have satisfied the procedural requirements for removal; and (2) the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

**DEFENDANTS HAVE SATISFIED THE PROCEDURAL**

**REQUIREMENTS FOR REMOVAL**

4.     This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b) because it is filed within thirty (30) days after receipt by Defendants of a copy of the Complaint.

5.     OFI and OFDI consent to removal.

6.     This Court is the proper venue for this action because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

7.     No previous application has been made for the relief requested herein.

8.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiffs, and a copy will be filed with the District Court, Clark County, Nevada.

**THIS COURT HAS SUBJECT MATTER**

**JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441**

9.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest.

**There Is Complete Diversity of Citizenship**

10.     There is complete diversity of citizenship between Plaintiffs, citizens of Nevada, and the Defendants, citizens of Colorado and New York.

11.     According to the Complaint, both Nat and Ann Cooper are individuals who at all relevant times resided in Las Vegas, Nevada.  Compl. ¶¶ 1, 2.  Accordingly, upon information and belief, Plaintiffs are citizens of Nevada.  *See* 28 U.S.C. § 1332.

12.     OFI is, and was at the time Plaintiffs commenced the Action, a corporation organized under the laws of the State of Colorado with its principal place of business at 2 World

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

Financial Center, 225 Liberty Street, 11th Floor, New York, New York. [1]   Therefore, OFI is a citizen of Colorado and New York.  *See* 28 U.S.C. § 1332(c)(1).

13.     OFDI is, and was at the time Plaintiffs commenced the Action, a corporation organized under the laws of the State of New York with its principal place of business at 2 World Financial Center, 225 Liberty Street, 11th Floor, New York, New York.  Comp1. ¶ 4.  Therefore, OFDI is a citizen of New York.  *See* 28 U.S.C. § 1332(c)(1).

14.     Accordingly, there is complete diversity between Plaintiffs and Defendants.

### The Amount In Controversy Exceeds $75,000

15.     The amount in controversy exceeds $75,000, exclusive of interest and costs.

16.     In their Complaint, Plaintiffs allege that Defendants made misrepresentations regarding Oppenheimer Champion Income Fund ("Champion Fund"), a mutual fund in which Plaintiffs had invested.  Compl. ¶ 11.  Plaintiffs claim that they suffered financial harm as a result of Defendants' alleged misconduct.  *See*, *e.g.*, Compl.  ¶¶ 33, 41, 48, 57.

17.     The Complaint alleges that Plaintiffs suffered losses of $108,000.  Compl. ¶¶ 30, 33. [2]   Plaintiffs' annual account statement for the year 2008, which is attached hereto as Exhibit 2, confirms that the value of their Champion Fund shares declined by more than $75,000 in 2008.[3]

18.     Plaintiffs seek compensatory damages and attorneys' fees under each of the three causes of action that they have alleged.  Moreover, Plaintiffs allege that Defendants acted "intentionally and fraudulently" and, therefore, they seek punitive damages under their claims for fraud and negligent misrepresentation.  Compl. ¶¶ 37, 49; Pg. 13 (1-4).  Plaintiffs allege that they

[1]     Plaintiffs mistakenly allege in their Complaint that OFI is a New York corporation. Compl. ¶ 3.  However, even if Plaintiffs allegations were taken as true, there would still be complete diversity of citizenship between Plaintiffs, citizens of Nevada, and Defendants, citizens of New York.

[2]     Plaintiffs' request for monetary relief "in excess of $10,000.00" is consistent with the pleading requirement of Nevada Rule of Civil Procedure 8(a) which provides that "[w]here a claimant seeks damages of more than $10,000, the demand shall be for damages 'in excess of $10,000' without further specification of amount."

[3]     Plaintiffs account application, attached hereto as Exhibit 3, demonstrates that Plaintiffs' account is held jointly.  Therefore the amount in controversy should be examined for them both collectively, rather than individually.  *See*, *e.g.*, *Eagle v. American Tel. & Tel. Co.*, 769 F.2d 541, 546 (9th Cir. 1985) (claims are properly aggregated for determining amount in controversy if they are derived from rights plaintiffs hold in group status).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

are entitled to "enhanced damages" under their claim for relief under N.R.S § 598.092, *et seq.* *See* Compl. ¶ 41.

19. In light of Plaintiffs' claimed losses of $108,000 and their requests for punitive damages, enhanced damages, and attorneys' fees, the amount in controversy exceeds $75,000. *See Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) (where complaint on its face alleges amount in controversy sufficient to meet jurisdictional minimum, requirement is presumptively satisfied unless it is a "legal certainty" that plaintiff cannot recover that amount); *id.* at 700 (attorneys' fees properly considered when determining amount in controversy); *Coleman v. Assurant, Inc.*, 463 F. Supp. 2d 1164, 1168 (D. Nev. 2006) ("'It is well established that punitive damages are part of the amount in controversy in a civil action.'").

20. Accordingly, this Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 and the case may be removed pursuant to 28 U.S.C. § 1441.

WHEREFORE, defendants OppenheimerFunds, Inc. and Oppenheimer Funds Distributor, Inc. remove this action from the District Court of Clark County, Nevada to this Court pursuant to 28 U.S.C. § 1441.

DATED this 22nd day of November, 2011.

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**

By: /s/ Adam K. Bult, Esq.
   100 North City Parkway, Suite 1600
   Las Vegas, Nevada 89106
   Telephone: 702.382.2101
   Facsimile: 702.382.8135
   Email: abult@bhfs.com
   *Attorneys for Defendants*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

## CERTIFICATE OF SERVICE

Pursuant to Fed.R.Civ.P.5(b), and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP, and that the foregoing **NOTICE OF REMOVAL** was served via U.S. Mail, postage prepaid, on the date and to the address shown below:

David Liebrader, Esq.
THE LAW OFFICES OF DAVID LIEBRADER, APC
601 S. Rancho Dr., Suite D-29
Las Vegas, NV 89106
*Attorneys for Plaintiffs*

DATED this 22nd day of November, 2011.

 /s/ Paula Kay
an employee of Brownstein Hyatt Farber Schreck, LLP

# EXHIBIT 1

1
SUMM
DAVID LIEBRADER, ESQ.
2
STATE BAR NO. 5048
THE LAW OFFICES OF DAVID LIEBRADER, INC.
3
601 S. RANCHO DR. STE. D-29
LAS VEGAS, NV 89106
4
(702) 380-3131
Attorney for Plaintiff

5

6
DISTRICT COURT
CLARK COUNTY, NEVADA

7

8
IN THE MATTER BETWEEN                    )
9                                        )
Nat Cooper and Ann Cooper                )    Case No: A-11-648214
10                                       )
PLAINTIFFS,                              )    Dept No.:  6
11                                       )
v.                                       )
12                                       )    SUMMONS
Oppenheimer Funds, Inc., a New York corporation,  )
13
Oppenheimer Funds Distributor Inc., a New York    )
corporation, LLC and DOES 1-10 and ROES 1-10,     )
14
inclusively                              )
15                                       )
DEFENDANTS                               )
16 _____ )

17
**SUMMONS- CIVIL**

18
**NOTICE! YOU HAVE BEEN SUED. THE COURT MAY DECIDE AGAINST YOU**

19
**WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS.**

20
**READ THE INFORMATION BELOW.**

21

TO THE DEFENDANTS: A civil complaint has been filed by the Plaintiff against you for the
22
relief set forth in the complaint.
23

24
    1.  If you intend to defend the lawsuit, within 20 days after this summons is served on

25

26

you, exclusive of the day of service, you must do the following:

   a.  File with the Clerk of this Court, whose address is shown below, a formal written response to the Complaint in accordance with the rules of the Court, with the appropriate filing fee.

   b.  Serve a copy of your response upon the attorney whose name and address is shown below.

2.  Unless you respond your default will be entered upon application of the Plaintiff and this court may enter a judgment against you for the relief demanded in the complaint, which could result in the taking of money or property or other relief requested in the Complaint.

3.  If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response may be filed on time.

4.  The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission members and legislators each have 45 days after service of this Summons within which to file an Answer or other responsive pleading to the Complaint.

Submitted By:

Clerk of the Court

OCT 2 1 2011

By: _____

Signature                          Deputy Clerk          Date

David Liebrader                    Clark County Courthouse
601 S. Rancho Dr. Ste D-29         200 Lewis Ave.                LOVIE HAWKINS
Las Vegas, NV 89106                Las Vegas, NV 89155
(702) 380-3131
Attorney for Plaintiff

**Note:  When service is by publication, add a brief statement of the object of the action.  See Nevada Rules of Civil Procedure 4(b)**

COMP
DAVID LIEBRADER, ESQ.
STATE BAR NO. 5048
THE LAW OFFICES OF DAVID LIEBRADER, APC
601 S. RANCHO DR. STE. D-29
LAS VEGAS, NV 89106
PH: (702) 380-3131
FX: (702) 380-3102
Attorney for Plaintiffs

## DISTRICT COURT
## CLARK COUNTY, NEVADA

| | |
|---|---|
| IN THE MATTER BETWEEN | Case No. A-11-648214 |
| Nat Cooper and Ann Cooper | Dept.: B |
| PLAINTIFFS, | COMPLAINT FOR DAMAGES |
| v. | |
| Oppenheimer Funds, Inc., a New York corporation, Oppenheimer Funds Distributor Inc., a New York corporation, LLC and DOES 1-10 and ROES 1-10, inclusively | |
| DEFENDANTS | |

COME NOW, Plaintiffs Nat and Ann Cooper through counsel, The Law Office of David Liebrader, Inc. and allege and aver as follows:

## INTRODUCTION

## THE PARTIES

1. Plaintiff Nat Cooper (hereinafter Mr. Cooper or "Plaintiff") is an individual who at all times relevant resided in Las Vegas, Nevada.

2. Plaintiff Ann Cooper (hereinafter Mrs. Cooper or "Plaintiff") is an individual who at all times relevant resided in Las Vegas, Nevada.

3. Defendant Oppenheimer Funds Inc. (hereinafter "Defendant" or "OFI") is a New York corporation with its principal place of business at 2 World Financial Center 225

Liberty St. 11th floor N.Y., N.Y.  OFI was the manager and investment advisor of the Oppenheimer Champion Income Fund (hereinafter the "Fund" or the "Champion Income Fund") and handled the day-to-day management of the Fund at all times relevant.  OFI earned a fee for its management of the Fund.

4.   Defendant Oppenheimer Funds Distributors, Inc. (hereinafter "Defendant" or "OFDI") is a New York Corporation with its principal place of business at 2 World Financial Center 225 Liberty St. 11th floor N.Y., N.Y.  OFDI is a subsidiary of OFI and was the principal underwriter and distributor of the Champion Income Fund at all times relevant.  OFDI and OFI are sometimes collectively referred to as "Oppenheimer".

## Jurisdiction and Venue

5.   Venue is proper in the Clark County District Court as the Defendants did business in this district, sold investment products in this district, and transactions at issue took place in this district.

## Fact Common to All Counts

6.   The Oppenheimer Champion Income Fund is an open-ended management investment company registered with the Securities and Exchange Commission.  The Fund sold five classes of shares, including Class A,B,C,N, and Y.

7.   The Fund has no employees.  Instead, it is managed by an investment manager (in this case, OFI) under a management contract that is approved by the Fund's Board of Trustees.  In return, OFI provides employees to act as the Fund's officers and manage the fund.

8.   OFI is responsible for making all day-to-day investment decisions for the Fund,

2

1    including decisions as to what assets the Fund will investment in.

2    9.    OFDI is the principal underwriter and distributor of the Fund's shares. OFDI typically

3          has selling arrangements with securities broker-dealers who then sell the Fund to

4          investors. OFDI helped draft the public offering and registration documents and other

5          marketing materials sent to the investing public.

6    10.   The Plaintiffs each purchased Class A Shares (symbol "OPCHX") of the Champion

7          Income Fund through a broker dealer.

8    11.   OFI and OFDI substantially misrepresented the highly speculative nature of the

9          Champion Income Fund. The risks of this Fund were materially misrepresented to the

10         investing public, including the Plaintiffs.

11   12.   In 2008, the value of the Fund's shares dropped approximately 80 percent, with

12         staggering losses of nearly 55% in the month of November 2008 alone. As the value

13         of these shares fell, so did the value of the Plaintiffs' investment in the Fund.

14   13.   The Champion Income Fund was portrayed by the Defendants as a relatively safe bond

15         mutual fund that did not involve "undue risk." For example, the August 7, 2006

16         prospectus states:

17

18         WHAT ARE THE FUND'S INVESTMENT OBJECTIVES? The Fund's primary

19         objective is to seek a high level of current income by investing mainly in a **diversified**

20         **portfolio** of high-yield, lower-grade, fixed-income securities that the Fund's

21         investment manager, Oppenheimer Funds Inc. (the "Manager") believes **do not**

22         **involve undue risk.** The Fund's secondary objective is to seek capital growth when

23         consistent with its primary objective.

24

25                                            3

26

1

2                    ***

3

4            WHO IS THE FUND DESIGNED FOR?  The Fund is designed primarily for investors

5            seeking high current income from a fund that invests mainly in lower-grade domestic

6            and foreign fixed-income debt securities.  Those investors should be willing to assume

7            the greater risks of short-term share price fluctuations that are typical for a fund that

8            invests mainly in high-yield domestic and foreign fixed-income debt securities, which

9            also have special credit risks.  Since the Fund's income level will fluctuate, it is not

10           designed for investors needing an assured level of current income.  The Fund is

11           intended to be a long-term investment and **may be appropriate as a part of a**

12           **retirement plan portfolio.**  The Fund is not a complete investment program.

13

14           See August 7, 2006 Prospectus (emphasis added).

15

16      14.  Similar representations were made in the prospectuses as far back as January 2001 and

17           up through and including January 2008.  The prospectuses make no disclosures that

18           this Fund was dramatically riskier than the peer group of high yield bond mutual

19           funds.

20      15.  The Defendants portrayed the Fund to be a conservative or safe bond fund.  As an

21           example, other conservative Oppenheimer funds held substantial positions in the

22           Champion Income Fund.  As of December 31, 2007, the Oppeheimer Conservative

23           Investor Fund had approximately 11% of its internal holdings invested in the

24

25                                             4

26

1    Champion Income Fund.

2    16.   OFI and OFDI portrayed high-yield fixed-income mutual funds to be relatively safe to

3          the investing public.  For example, in an Oppenheimer brochure entitled "Saving for

4          Retirement: How to Make the Most of Your Company's Plan" dated February 21,

5          2005, Oppenheimer compared high-yield fixed-income mutual funds to other equity-

6          based mutual funds.  Page 13 of this article presents a chart showing the relative

7          degrees of risk in a mutual fund – from cash as being the most conservative to global

8          and international equity mutual funds being the most aggressive and riskiest mutual

9          funds.  The chart shows that Oppenheimer considers high-yield fixed-income mutual

10         funds to be less aggressive and more conservative than any equity mutual funds.

11   17.   The Champion Income Fund was anything but safe, and any representations to the

12         contrary made by the Defendants were false.

13   18.   The Defendants failed to accurately represent the risks and characteristics of the

14         Champion Income Fund and misled investors, including the Plaintiffs.

15   19.   The representations made by the Defendants were false and misleading for a number

16         of reasons:

17

18         a)   The Fund pursued risky trading strategies beginning in late 2006 when

19         Defendant's agents and employees started concentrating the Fund's assets in

20         speculative mortgage-backed securities and derivative investments;

21         b)   The Fund's strategy created an undue amount of risk and did not adequately

22         disclose the illiquid nature of these derivatives and mortgage-backed securities;

23         c)   The Fund failed to disclose the extent to which the assets in the Fund were

24

25                                         5

26

exposed to leverage, thereby increasing the risk;

d)      The Fund failed to disclose the risks related to concentrating the Fund's assets in one particular industry or in one type of investment; and

e)      The Fund did not identify the tranches of the derivatives being purchased by the Fund and failed to address the significantly different risks and characteristics of lower-level tranches as compared to higher-level tranches.

20. The Fund's new trading strategy beginning at the end of 2006 and continuing through the end of 2008 gambled on these derivatives and mortgage-backed securities but the Defendants failed to adequately inform investors of this new strategy. The Defendants failed to inform the Plaintiffs and other investors that this new trading strategy was dramatically riskier than those previously used.

21.     As part of this new strategy, the Fund began investing in total-return swaps. Total-return swaps are highly illiquid, speculative and complex agreements between parties to exchange cash flows in the future bases on how a set of securities performs. Specifically, the Fund was betting that top-rated commercial mortgage-backed securities would rally in 2008. The Fund gambled on these total-return swaps and lost.

22.     In addition to investing in total-return swaps as part of this new trading strategy, the Champion Income Fund was also concentrated in credit-default swaps ("CDSs"). CDSs are similar to insurance contracts that protect investors against bond and loan defaults (or other specified credit events like bankruptcy or restructuring). In exchange for being responsible to pay out for such issues, CDS sellers receive a stream of interest payments from the CDS buyers. It is not necessary for the buyer to own the

6

underlying credit instrument to buy these CDSs. **The CDSs in the Champion Income Fund declined $238 million through September 2008 alone,** adversely impacting thousands of investors who had invested in the Fund not knowing the extent of the high-risk, inappropriate gamble taken by the Defendants.

23.   Selling CDSs is extremely risky and speculative when insuring companies are already struggling with credit problems. Through at least September 2008, the Fund was selling CDSs on troubled companies including Lehman Brothers Holdings Inc., American International Group Inc., General Motors Corp. and newspaper company Tribune Co. Many of these firms have collapsed, filed for bankruptcy, or otherwise had problems leaving holds of the Fund financially devastated. The risks of these securities were well known to the Fund managers prior to the Fund meltdown occurring but the extent of this risk was not adequately disclosed to the Plaintiffs.

24.   While the Champion Income Fund can invest in derivatives, the Fund took a massive bet in some of the riskiest derivative tranches available. These risks were not adequately disclosed to purchasers in any other manner than cursory, boilerplate disclosures. No specific detailed risk disclosures were provided. These derivatives added leverage to the Fund because they allowed the Fund to bet on more securities than they actually hold in the portfolio. This exacerbated losses when the Fund was already declining. The risks of the Fund made it much more similar to a hedge fund than the conservative high income fund it was portrayed to clients in offering and marketing materials.

25.   The Champion Income Fund also increased its gamble on falling mortgage related bonds in 2008. For example, mortgage securities tied to Washington Mutual Inc. with

7

a $9 million principal value were valued at only $3 million at the end of September 2008. A set of five Freddie Mac mortgage-backed securities with a combined principal amount of $20 million were valued at just $2.5 million. As defaults continued to rise, the mortgage related holding plummeted. While this sort of sector bet might be appropriate for a sector fund or hedge fund, the Champion Income Fund was not meant to be a sector or hedge fund and was represented to investors as an appropriate investment for conservative investors.

26.  The Fund's trading strategy exacerbated its losses when it made a sector bet in struggling Wall Street brokerage firms. For example, the Fund purchased Lehman Brothers bonds between June 1, 2008 and September 30, 2008 with $29 million in principal value. Lehman Brothers filed for Chapter 11 bankruptcy-court protection in med-September 2008, and those bonds fell to just $144,000. The fund also added Morgan Stanley bonds with $13 million in principal during that period. The bonds were valued at approximately $8.3 million by the end of September 2008. These investments may have been appropriate for a financial sector fund or aggressive growth fund but not for what was portrayed as a conservative bond fund.

30.  Plaintiffs initially invested in the 1990s. In October 2006, the High Yield Fund was merged into the Champion Income Fund , and thus Plaintiffs' shares were converted to the Champion Income Fund. In addition, Plaintiffs reinvested their dividends and as a result purchased additional shares throughout this time period. At the end of December 2008 Plaintiffs held 13,890 shares which were valued at $23, 614 representing a loss of over $108,000.

8

31.   Based on the information provided by Oppenheimer Plaintiffs believed that there was minimal risk in the Champion Income Fund.

33.   As a result of the losses in the Champion Income Fund, Plaintiff has suffered losses of approximately $108,000.

## COUNT I – VIOLATION OF N.R.S. §598.092 Et Seq.

### DECEPTIVE TRADE PRACTICES

34.   Plaintiffs restate and reallege paragraphs 1 through 33 as though fully stated herein as paragraph 34.

35.   NRS § 598.092 states: "Deceptive trade practice" defined:

A person engages in a "deceptive trade practice" when in the course of his business or occupation he:

(5) Advertises or offers an opportunity for investment and:

(a) Represents that the investment is guaranteed, secured or protected in a manner which he knows or has reason to know, is false or misleading;

(b) Represents that the investment will earn a rate of return which he knows or has reasons to know is false or misleading;

**(c) Makes any untrue statement of a material fact or omits to state a material fact which is necessary to make another statement, considering the circumstances under which it is made, not misleading;**

(d) Fails to maintain adequate records so that an investor may determine how his money is invested;

9

(e) Fails to provide information to an investor after a reasonable request for information concerning his investment;

**(f) Fails to comply with any law or regulation for the marketing of securities or other investments**

NRS § 598.092 [emphasis added.]

36. Defendants used deception, false promises, and misrepresentations to hide the full risks of the Champion Income Fund.

37. Defendants intentionally and fraudulently concealed that the level of risk and speculative nature of the derivatives and mortgage backed securities in which the Champion Income Fund was concentrated in.

38. The false and fraudulent statements regarding the risks and characteristics of the Champion Income Fund constituted a deceptive act or practice pursuant to the Deceptive Trade Practices Act.

39. The aforesaid course of conduct of the Defendants arose out the Plaintiff's dealings with Defendants in pursuit of financial security, and as such, was involved in trade or commerce.

40. It was the intention of the Defendants that the Plaintiff rely on these false statements and representations.

41. As a direct and proximate result of Defendants' fraudulent course of conduct, the Plaintiff suffered financial damage in an amount in excess of $10,000 plus loss of interest.  As elderly Plaintiffs they are also entitled to enhanced damages and attorney's fees as provided by statute.

## **COUNT II – Common Law Fraud**

42. Plaintiffs restate and reallege paragraphs 1 through 41 as through fully stated herein as paragraph 42.

43. The Defendants misrepresented the level of risk associated with the Champion Income Fund by portraying the Fund as not having "undue risk", by representing that it would be "appropriate as a part of the retirement plan portfolio", and by representing the Fund as being well-diversified.

44. In fact, the Fund was extraordinarily risky and lost approximately 80% of its value in less than one year.

45. The Defendants knew the aforesaid statements were false at the time they were made to Plaintiff.

46. The Defendants made the false statements with intent to induce the Plaintiff to invest money in the Champion Income Fund and to keep the money invested in the Fund as the Fund took on excessive risk.

47. The Plaintiffs relied on the truth of the statements made by Defendants when they initially invested in the Fund, when they continued to stay invested in the Fund, and when they made subsequent investments in the Fund.

48. As a result of the reliance on the aforesaid false statements, the Plaintiffs suffered financial loss.

49. Furthermore, Defendants conduct was willful and malicious and a violation of trust and confidence.

11

## COUNT III – Negligent Misrepresentation

50. Plaintiffs restate and reallege paragraphs 1 through 49 as though fully stated herein as paragraph 50.

51. The Defendants are in the business of supplying information in that they provide information (albeit, incomplete and misleading information) to investors to make decisions about the funds that they are purchasing.

52. The Defendants had a duty to supply accurate information to the Plaintiff about the risks and characteristics of the Champion Income Fund.

53. The Defendants failed that duty to supply accurate information and misrepresented the level or risk associated with the Champion Income Fund by portraying the Fund as not having "undue risk", by representing that it would be "appropriate as a part of a retirement plan portfolio", and by representing the Fund as being well-diversified.

54. The aforementioned statements were false and misleading.

55. The Defendants made the false statements with the intent to induce the Plaintiffs to invest money in the Champion Income Fund and to keep the money invested in the Fund as the Fund took on excessive risk.

56. The Plaintiffs relied on the truth of the statements made by Defendants when they initially invested in the Fund, and when they continued to stay invested in the Fund and when they made subsequent investments in the Fund.

57. As a direct and proximate result of the reliance on the aforesaid false statements, the Plaintiffs suffered financial loss.

///

FIRST CLAIM FOR RELIEF

12

WHEREFORE, Plaintiffs pray for relief as follows:

1.    Damages in excess of $10,000.00;

2.    Attorneys' fees and costs;

3.    Enhanced damages; and

4.    Such other and further relief as the Court deems just and proper

SECOND CLAIM FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1.    Damages in excess of $10,000.00;

2.    Punitive damages in an amount to be proven at trial;

3.    Attorneys' fees and costs; and

4.    Such other and further relief as the Court deems just and proper

THIRD CLAIM FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1.    Damages in excess of $10,000.00;

2.    Punitive damages in an amount to be proven at trial;

3.    Attorneys' fees and costs; and

4.    Such other and further relief as the Court deems just and proper

**The Plaintiffs hereby request a trial by jury.**


Dated: September 13, 2011        Respectfully submitted,

The Law Office of David Liebrader, Inc.

By:_____
David Liebrader
Attorney for Plaintiffs

13

# EXHIBIT 2

# OppenheimerFunds®
## The Right Way to Invest

## Annual Statement

**Statement Period: January 01, 2008 - December 31, 2008**
Page  1  of  4

**Your Financial Advisor:**
ELIZABETH A MEINHOLD
MML INVESTORS SERVICES INC
10100 W CHARLESTON BLVD STE 250
LAS VEGAS, NV  89135-5006
(702) 791-0200

NAT COOPER &
ANN M COOPER
JT TEN WROS NOT TC
237 LOGANSBERRY LN
LAS VEGAS NV  89145-4739

---

| **Total Portfolio Value** |
| **Market Value on December 31, 2008**   **$67,694.30** |

 Visit us online at **www.oppenheimerfunds.com**

24-hour automated service: **1-800-CALL-OPP (225-5677)**

---

## Year-to-Date Portfolio Summary

| Portfolio Type | Market Value on January 1, 2008 | Additions | Withdrawals | Change in Value/Earnings* | Market Value on December 31, 2008 |
|---|---|---|---|---|---|
| Non-Retirement | $166,319.53 | + $0.00 | – $0.00 | – $98,625.23 | = $67,694.30 |
| **Total** | **$166,319.53** | **+ $0.00** | **– $0.00** | **– $98,625.23** | **= $67,694.30** |

\* Does not include year-to-date dividends and/or capital gains paid in cash (not reinvested) totaling:  $6,277.70

## Year-to-Date Summary of Accounts

| Account Number | Oppenheimer Fund Name & Class | Market Value on January 1, 2008 | Market Value on December 31, 2008 | Percentage of Total Portfolio | Fund Category |
|---|---|---|---|---|---|
| **Non-Retirement** | | | | | |
| REDACTED 6166 | Champion Income Fund A | $116,840.57 | $23,613.72 | 35% | Taxable Bond |
| 4712 | Rochester National Municipals A | $9,775.29 | $4,995.70 | 7% | Municipal Bond |
| 6480 | Limited-Term Government Fund A | $6,140.86 | $5,751.64 | 8% | Taxable Bond |
| 1965 | International Bond Fund A | $33,562.81 | $33,333.24 | 50% | Taxable Bond |
| | | | | 100% | |

## OppenheimerFunds News

\*\*\*IMPORTANT\*\*\* Please retain this 2008 annual account statement for your records.  You will generally not receive a Form 1099-DIV if you have a retirement account, or if your account earned less than $10.00 in dividends in 2008.

REDACTED

# OppenheimerFunds®
The Right Way to Invest

## Annual Statement
**Statement Period: January 01, 2008 - December 31, 2008**
Page  2  of  4

---

## OppenheimerFunds Account Detail - *Non-Retirement*

### Oppenheimer Champion Income Fund Class A

| | |
|---|---|
| Account Number | REDACTED 6166 |
| Account Registration | NAT COOPER & ANN M COOPER JT TEN WROS |
| | NOT TC |
| Fund Symbol | OPCHX |
| Fund Category | Taxable Bond |

### Value on December 31, 2008
| | |
|---|---|
| *Market Value* | $23,613.72 |
| *Shares Owned* | 13,890.421 |
| *Share Price* | $1.70 |

### Year-To-Date Summary
| | |
|---|---|
| *Dividends* | $7,991.11 |

### Year-to-Date Transaction Detail

| Transaction Date | Transaction Description | Dollar Amount | Share Price | Number of Shares | Ending Share Balance |
|---|---|---|---|---|---|
| 01/31/08 | Dividend Paid in Cash | $727.12 | $8.54 | | 13,157.722 |
| 02/29/08 | Dividend Paid in Cash | $707.80 | $8.00 | | 13,157.722 |
| 03/31/08 | Dividend Paid in Cash | $689.40 | $7.91 | | 13,157.722 |
| 04/30/08 | Dividend Paid in Cash | $680.75 | $8.51 | | 13,157.722 |
| 05/30/08 | Dividend Paid in Cash | $679.90 | $8.63 | | 13,157.722 |
| 06/30/08 | Dividend Paid in Cash | $676.84 | $8.12 | | 13,157.722 |
| 07/31/08 | Dividend Paid in Cash | $715.62 | $7.73 | | 13,157.722 |
| 08/29/08 | Dividend Paid in Cash | $741.20 | $7.51 | | 13,157.722 |
| 09/30/08 | Dividend Paid in Cash | $659.07 | $6.26 | | 13,157.722 |
| 10/31/08 | Dividend Reinvested | $796.57 | $3.95 | +201.663 | 13,359.385 |
| 11/28/08 | Dividend Reinvested | $565.50 | $1.75 | +323.143 | 13,682.528 |
| 12/30/08 | Dividend Reinvested | $351.34 | $1.69 | +207.893 | 13,890.421 |

---

### Oppenheimer Rochester National Municipals Class A

| | |
|---|---|
| Account Number | REDACTED 4712 |
| Account Registration | NAT COOPER & ANN M COOPER JT TEN WROS |
| | NOT TC |
| Fund Symbol | ORNAX |
| Fund Category | Municipal Bond |

### Value on December 31, 2008
| | |
|---|---|
| *Market Value* | $4,995.70 |
| *Shares Owned* | 971.927 |
| *Share Price* | $5.14 |

### Year-To-Date Summary
| | |
|---|---|
| *Dividends* | $628.88 |

### Year-to-Date Transaction Detail

| Transaction Date | Transaction Description | Dollar Amount | Share Price | Number of Shares | Ending Share Balance |
|---|---|---|---|---|---|
| 01/22/08 | Dividend Reinvested | $50.12 | $11.08 | +4.523 | 898.877 |
| 02/26/08 | Dividend Reinvested | $50.35 | $10.06 | +5.005 | 903.882 |
| 03/25/08 | Dividend Reinvested | $50.64 | $9.45 | +5.359 | 909.241 |
| 04/22/08 | Dividend Reinvested | $50.96 | $9.56 | +5.331 | 914.572 |
| 05/27/08 | Dividend Reinvested | $52.15 | $9.64 | +5.410 | 919.982 |
| 06/24/08 | Dividend Reinvested | $52.40 | $9.24 | +5.671 | 925.653 |
| 07/22/08 | Dividend Reinvested | $52.69 | $8.86 | +5.947 | 931.600 |
| 08/26/08 | Dividend Reinvested | $53.15 | $9.04 | +5.879 | 937.479 |
| 09/23/08 | Dividend Reinvested | $53.47 | $8.39 | +6.373 | 943.852 |
| 10/28/08 | Dividend Reinvested | $53.85 | $6.35 | +8.480 | 952.332 |
| 11/25/08 | Dividend Reinvested | $54.32 | $6.05 | +8.979 | 961.311 |
| 12/30/08 | Dividend Reinvested | $54.78 | $5.16 | +10.616 | 971.927 |

Taxable income may be distributed by your Oppenheimer Municipal Fund. If the amount of taxable income is greater than $10.00, the amount will be reported to you and to the IRS on Form 1099-DIV. Form 1099-DIV will be mailed to you in January.

REDACTED



**OppenheimerFunds**®
The Right Way to Invest

**Annual Statement**

Statement Period: January 01, 2008 - December 31, 2008
Page 3 of 4

---

## OppenheimerFunds Account Detail - *Non-Retirement (continued)*

### Oppenheimer Limited-Term Government Fund Class A

| | |
|---|---|
| Account Number | REDACTED 6480 |
| Account Registration | NAT COOPER & ANN M COOPER JT TEN WROS NOT TC |
| Fund Symbol | OPGVX |
| Fund Category | Taxable Bond |

**Value on December 31, 2008**

| | |
|---|---|
| Market Value | $5,751.64 |
| Shares Owned | 646.252 |
| Share Price | $8.90 |

**Year-To-Date Summary**

| | |
|---|---|
| Dividends | $296.19 |

#### Year-to-Date Transaction Detail

| Transaction Date | Transaction Description | Dollar Amount | Share Price | Number of Shares | Ending Share Balance |
|---|---|---|---|---|---|
| 01/31/08 | Dividend Reinvested | $23.50 | $10.00 | +2.350 | 617.667 |
| 02/29/08 | Dividend Reinvested | $25.21 | $9.90 | +2.546 | 620.213 |
| 03/31/08 | Dividend Reinvested | $23.57 | $9.84 | +2.395 | 622.608 |
| 04/30/08 | Dividend Reinvested | $24.25 | $9.90 | +2.449 | 625.057 |
| 05/30/08 | Dividend Reinvested | $26.17 | $9.88 | +2.649 | 627.706 |
| 06/30/08 | Dividend Reinvested | $24.67 | $9.80 | +2.517 | 630.223 |
| 07/31/08 | Dividend Reinvested | $25.85 | $9.69 | +2.668 | 632.891 |
| 08/29/08 | Dividend Reinvested | $26.64 | $9.62 | +2.769 | 635.660 |
| 09/30/08 | Dividend Reinvested | $24.51 | $9.52 | +2.575 | 638.235 |
| 10/31/08 | Dividend Reinvested | $25.92 | $9.25 | +2.802 | 641.037 |
| 11/28/08 | Dividend Reinvested | $22.27 | $8.70 | +2.560 | 643.597 |
| 12/30/08 | Dividend Reinvested | $23.63 | $8.90 | +2.655 | 646.252 |

---

### Oppenheimer International Bond Fund Class A

| | |
|---|---|
| Account Number | REDACTED 1965 |
| Account Registration | NAT COOPER & ANN M COOPER JT TEN WROS NOT TC |
| Fund Symbol | OIBAX |
| Fund Category | Taxable Bond |

**Value on December 31, 2008**

| | |
|---|---|
| Market Value | $33,333.24 |
| Shares Owned | 5,630.615 |
| Share Price | $5.92 |

**Year-To-Date Summary**

| | |
|---|---|
| Dividends | $1,923.68 |
| Short-term capital gains | $120.96 |
| Long-term capital gains | $126.21 |

#### Year-to-Date Transaction Detail

| Transaction Date | Transaction Description | Dollar Amount | Share Price | Number of Shares | Ending Share Balance |
|---|---|---|---|---|---|
| 01/31/08 | Dividend Reinvested | $111.95 | $6.56 | +17.066 | 5,294.238 |
| 02/29/08 | Dividend Reinvested | $112.66 | $6.69 | +16.840 | 5,311.078 |
| 03/31/08 | Dividend Reinvested | $110.62 | $6.75 | +16.388 | 5,327.466 |
| 04/30/08 | Dividend Reinvested | $115.68 | $6.63 | +17.448 | 5,344.914 |
| 05/30/08 | Dividend Reinvested | $126.50 | $6.55 | +19.313 | 5,364.227 |
| 06/30/08 | Dividend Reinvested | $115.24 | $6.47 | +17.811 | 5,382.038 |
| 07/31/08 | Dividend Reinvested | $123.44 | $6.48 | +19.049 | 5,401.087 |
| 08/29/08 | Dividend Reinvested | $123.39 | $6.31 | +19.555 | 5,420.642 |
| 09/30/08 | Dividend Reinvested | $109.65 | $5.96 | +18.398 | 5,439.040 |
| 10/31/08 | Dividend Reinvested | $120.37 | $5.54 | +21.727 | 5,460.767 |
| 11/28/08 | Dividend Reinvested | $98.29 | $5.68 | +17.305 | 5,478.072 |
| 12/30/08 | Dividend Reinvested | $655.89 | $5.92 | +110.792 | 5,588.864 |
| 12/30/08 | LT Cap Gain Reinvested | $126.21 | $5.92 | +21.319 | 5,610.183 |
| 12/30/08 | ST Cap Gain Reinvested | $120.96 | $5.92 | +20.432 | 5,630.615 |

REDACTED

# How to Contact Us

**1.800.CALL OPP (225.5677)**
24-hour automated information and transactions.

**Fax 1.303.768.1500**

# To Add to Your Account By Check

**To Add to Your Account by Check** Write a check made payable to your fund (minimum $50) and note your account number on the check. If available, include an investment coupon from a recent Confirmation of Fund Activity. Mail your check to:

**Regular Mail**
OppenheimerFunds Distributor, Inc.
P.O. Box 5270
Denver, CO 80217-5270

**Overnight Delivery**
OppenheimerFunds Distributor, Inc.
12100 E Iliff Avenue
Suite 300
Aurora, CO 80014-1250

# www.oppenheimerfunds.com

**Information you need right at your fingertips –** Fund performance, fund documents, daily and historical fund prices and market commentary.

**Log in to —** Review your balance, transaction history, and account statements or to make a quick purchase, exchange or redemption.

# Retirement Account Contributions

If your statement includes a Contribution Summary, please keep in mind that this does not represent a tax form. IRS Form 5498, mailed in May, contains final contributions for tax purposes. Please note, account details will not appear on this statement for prior year contributions unless the contribution was made between January 1 and April 15 of the current year. For details on these transactions, please refer to your last Annual Account Statement.

# Sales Charge Information

**You may be eligible for breakpoint discounts based on the size of your purchase, current holdings or future purchases. The sales charge you paid may differ slightly from the Prospectus disclosed rate due to rounding calculations. Please refer to the Prospectus or contact your financial advisor for further information.**

# Glossary

**Additions**
The amount added to your account balance during the statement period. Includes purchases as well as transfers into your account, but does not include exchanges within a portfolio type (such as a portfolio of retirement accounts) in your Year-to-Date Portfolio Summary section.

**Change in Value /Earnings**
Reflects the fluctuations in share price during the defined period. This calculation also includes dividends and/or capital gains reinvested. For funds that do not accrue dividends daily, net asset value will generally decrease when dividends or capital gains are distributed from the fund.

**MOP**
Maximum offering price, which is calculated by dividing the fund's net asset value by one minus the maximum sales charge.

**NAV**
Net asset value or price per share of the fund. It represents the sum of the market values of all the securities held in a portfolio less expenses and divided by the number of shares outstanding.

**Withdrawals**
The amount withdrawn from your account balance during the statement period Includes redemptions as well as transfers out of your account, but does not include exchanges within a portfolio type (such as a portfolio of retirement accounts) in your Year-to-Date Portfolio Summary section.

**Fund or Ticker Symbol**
Is a way to indentify most securities. You can use it to look up a particular Oppenheimer fund in other financial resources.

# Fund Category Descriptions

**Global** fund investments vary by fund, but these funds may invest in securities throughout the world, if permitted.
**Growth** funds invest in the stock of companies that are believed to have growth potential.
**Value** funds invest in stocks that are believed to have a higher potential value than reflected in the current share price.
**Core** funds generally seek either high total return or long-term capital appreciation while providing exposure to growth and/or value investments.
**Hybrid/Specialty** funds have investment objectives, methodologies, holdings and risks that vary.
**Taxable Bond** fund investments vary by fund, but these funds may invest in a broad range of corporate and government (both U.S. and, in some cases, foreign) debt obligations, if permitted.
**Municipal Bond** Funds generally invest in debt obligations of a state or municipality while seeking tax-exempt income.
**Money Market** funds generally invest in short-term, high quality debt instruments.

---

**OppenheimerFunds Services(OFS)**

A division of OppenheimerFunds, Inc. confirms transactions in your account as agent for the fund and for your investment dealer.

For transactions which are purchases of shares, OFS acts as the agent for OppenheimerFunds Distributor, Inc. (OFDI), the distributor of the Fund, in issuing this statement. The distributor sold the shares to your dealer, and your dealer sold them to you. Your dealer acted as principal in the transaction and will receive as compensation that part of the sales charge, if any, that is set forth in the Fund's current prospectus.  If you bought shares directly, through an agency transaction or through a broker, dealer or other intermediary, OFDI acted as agent in placing the trade.

Additional information about your Fund account may be found in the Fund's current prospectus, including information about how to redeem shares. Please consult your prospectus, or write or call us at the addresses and  telephone numbers on this statement.

**This account statement reflects a purchase, redemption or other financial transaction. Please review all of the information carefully to verify the accuracy of the transactions. You should promptly notify OppenheimerFunds Distributor, Inc. immediately if there is an error,** inaccuracy or discrepancy. **You can make such report to OppenheimerFunds, Distributor, Inc. at 1.800.225.5677. An oral report should also be re-confirmed in writing to OppenheimerFunds Distributor, Inc. P.O. Box 5270, Denver, CO 80217-5270. It is important that you report any discrepancy promptly to help protect your rights, including your rights under the Securities Investor Protection Act. If you do not notify us of an error within 60 days of receipt of this statement, you will be deemed to have ratified each transaction, and we may not be able to adjust your account.**

**This statement is only a record of the rights of the shareholder-of-record at the date of its issue. This statement is neither a negotiable instrument nor a security. Delivery of this statement confers no rights of the recipient.**

**Oppenheimerfunds Distributor, Inc. is a member of SIPC. You may obtain information about SIPC, including the SIPC brochure, by contacting SIPC at 202.371.8300, or online at www.sipc.org.**

For any written correspondence, please send to: OppenheimerFunds Services, P.O. Box 5270, Denver, CO 80217-5270.

EXHIBIT 3

**REDACTED**    **REDACTED**

# Account Application
REDACTED
REDACTED

**OppenheimerFunds** /
The Right Way to Invest   REDACTED

For non-retirement accounts

## Instructions

You must complete this Account Application to open a new mutual fund account. To open a retirement account, download the application at www.oppenheimerfunds.com or call us at 1.800.525.7048.

**By completing this application, you will no longer need to complete a USA PATRIOT Act Supplemental Insert.**

You should read the prospectus for each fund that you invest in. You can obtain a copy of the prospectus from your financial advisor or download it from our website, noted above.

When you have completed the application and signed it, please send it to us with a check made payable to OppenheimerFunds Distributor, Inc. The completed application and check should be sent to:

**OppenheimerFunds Distributor, Inc.**

Regular mail:
P.O. Box 5270
Denver, CO 80217-5270

Overnight mail:
10200 East Girard Avenue
Building D
Denver, CO 80231-5516

For the most current versions of any of our forms, visit www.oppenheimerfunds.com

If you have questions about how to complete this application or would like information on other services, please contact your financial advisor or call OppenheimerFunds at 1.800.525.7048.

**Please print clearly in all CAPITAL LETTERS using black ink. Color in circles completely. For example: ● not ⊗ not ⊘**

### USA PATRIOT Act requirements

To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account.

**What this means for you:** When you open an account, we need to capture certain information that allows us to verify your identity. The following information needs to be provided on this application for all individuals who will be the registered owner or co-owner of an account, acting pursuant to a Power of Attorney or will be signing on behalf of a legal entity that will own the account.

· Name and Date of Birth
· Residential/Street address (P.O. Box not accepted; APO/FPO addresses accepted)
· Social Security Number (SSN) or Tax Identification Number (TIN)
· We may also ask to see your driver's license or other identifying documents

If the registered owner of this account is a Trust, Corporation or other entity, please also provide:

· Corporate Resolution and certified copy of the Articles of Incorporation
· First and last pages of the Trust Agreement and the Trust date
· Partnership Agreement along with the date of organization

## 1 Financial advisor information

400327
Rep ID number

ELIZABETH A. MEINHOLD
First name, middle initial, last name

MML INVESTORS SERVICES
Registered firm name/Clearing firm name

3770 HOWARD HUGHES PKWY #200   MML Investors Services, Inc.
Registered firm number/Clearing firm number

LAS VEGAS
City

NV
State

1414 Main Street
Springfield, MA 01144-1099  1109
Zip

(702) 396-2669
Phone number          Extension

eameinhold@finsvcs.com
Email

1

## 2   Account ownership

Please select one ownership choice, complete the section below that applies to this type of ownership, then skip to *Section 3—Mailing address.*

☑ **A. Individual or joint account**
Joint owners will be *joint tenants with rights of survivorship* unless you instruct us otherwise or that type of ownership is not available in your state.

○ **B. Account held by a trust, corporation or other entity**
This application must be signed by all trustees or corporate officers whose signatures are required under the trust agreement or corporate by-laws.

○ **C. Account that is a transfer or a gift to a minor**
These accounts are established under the Uniform Gifts to Minors Act (UGMA) or the Uniform Transfers to Minors Act (UTMA).

---

## A. Individual or joint account

**Registered owner #1**

NAT   COOPER
First name, middle initial, last name   ○Mr. ○Mrs. ○Ms.

**We cannot accept a P.O. Box as a residential address; APO/FPO address accepted.**

237 LOGANSBERRY LANE
Residential street address

LAS VEGAS
City

NV
State

89145
Zip

(702) 363-9764
Home Phone Number

(   )
Daytime Phone Number

REDACTED 6413
Social Security Number

REDACTED 1939
Date of Birth (mm/dd/yyyy)

**Registered owner #2**

ANN M. COOPER
First name, middle initial, last name   ○Mr. ○Mrs. ○Ms.

237 LOGANSBERRY LANE
Residential street address

LAS VEGAS
City

NV
State

89145
Zip

**Information about additional registered owners should be provided on a separate sheet.**

(702) 363-9764
Home Phone Number

(   )
Daytime Phone Number

REDACTED 7782
Social Security Number

REDACTED 1939
Date of Birth (mm/dd/yyyy)

---

## B. Account held by a trust, corporation or other entity

**Type of entity**

Please select one:
○ Trust   ○ Corporation   ○ Other entity

Is it tax exempt?
○ Yes   ○ No

Name of trust, corporation or other entity

Tax Identification Number   **or**   Social Security Number

Trust date (mm/dd/yyyy)

**Trustee or first authorized signer**

First name, middle initial, last name

**We cannot accept a P.O. Box as a residential address; APO/FPO address accepted.**

Residential street address

**For trusts and corporations, this application must be signed by all trustees or corporate officers whose signatures are required under the trust agreement or corporate by-laws. Please see instructions on page 1 for additional documentation required.**

City

State

Zip

(   )
Home Phone Number

(   )
Daytime Phone Number

Social Security Number

Date of Birth (mm/dd/yyyy)

2

**REDACTED**

<u>Missing Information on Applications</u>

Client Name _____

_____ _____

_____

Social Security # _____

Date of Birth _____

Class of Shares _____

_____ _____

_____

Miscellaneous _____

Cumulative Value ___ 157,118.98 _____

(SEND TO FUND COMPANY)

**REDACTED**

**B. Account held by a trust, corporation or other entity (continued)**

**REDACTED**

*Trustee or second
authorized signer*

First name, middle initial, last name

Residential street address

City

State                                     Zip

Information about additional
signers should be provided on
a separate sheet.

( )
Home Phone Number

( )
Daytime Phone Number

Social Security Number

Date of Birth (mm/dd/yyyy)

## C. Transfer or Gift to a Minor (UTMA/UGMA)

*Minor*

We cannot accept a P.O. Box
as a residential address;
APO/FPO address accepted.

First name, middle initial, last name

Residential street address

City

State                                     Zip

Social Security Number

Date of Birth (mm/dd/yyyy)

*Custodian*

First name, middle initial, last name   ○Mr. ○Mrs. ○Ms.

Residential street address

City

State                                     Zip

( )
Home Phone Number

( )
Daytime Phone Number

Social Security Number

Date of Birth (mm/dd/yyyy)

*Successor custodian*

First name, middle initial, last name

| **3** | **Mailing address** |

If your mailing address
is different from the
residential address, please
provide a mailing address.
All correspondence will
be mailed to this address.

You may use a P.O. Box as a
mailing address.

Complete this section only if your mailing address is different from your residential address.

Street address or principal place of business

City                              State

Apartment or P.O. Box number

Zip

3

## 4  Select your funds

To select your funds, take the following steps:
1. Choose from the list of Oppenheimer funds below.
2. Check the class of funds you want to invest in. If no class is checked, Class A shares will be purchased.
3. Show the amount of your initial investment.

The minimum investment is $1,000 per fund unless you have chosen to buy shares automatically via Asset Builder, in which case you should complete Section 5C on page 5.
If you are unable to locate an Oppenheimer fund, verify its name and write it in at the bottom of the list in the category called *Other*. Be sure to select the appropriate share class.
Please consult www.oppenheimerfunds.com for the most current list of funds.

| Category | Oppenheimer Fund | Class A | Class B | Class C | Initial Investment |
|---|---|---|---|---|---|
| **Global Equity Funds** | Developing Markets Fund | ○ 785 | ○ 786 | ○ 787 | $ |
| | Global Fund | ○ 330 | ○ 331 | ○ 332 | $ |
| | Global Opportunities Fund | ○ 215 | ○ 216 | ○ 217 | $ |
| | International Growth Fund | ○ 825 | ○ 826 | ○ 827 | $ |
| | International Small Company Fund | ○ 815 | ○ 816 | ○ 817 | $ |
| | Quest International Value Fund, Inc. | ○ 254 | ○ 255 | ○ 256 | $ |
| **Equity Funds** | Capital Appreciation Fund | ○ 320 | ○ 321 | ○ 322 | $ |
| Stock Funds | Discovery Fund | ○ 500 | ○ 501 | ○ 502 | $ |
| | Emerging Growth Fund | ○ 721 | ○ 722 | ○ 723 | $ |
| | Emerging Technologies Fund | ○ 765 | ○ 766 | ○ 767 | $ |
| | Enterprise Fund | ○ 885 | ○ 886 | ○ 887 | $ |
| | Growth Fund | ○ 270 | ○ 271 | ○ 272 | $ |
| | Main Street Fund* | ○ 700 | ○ 701 | ○ 702 | $ |
| | Main Street Opportunity Fund* | ○ 731 | ○ 732 | ○ 733 | $ |
| | Main Street Small Cap Fund* | ○ 847 | ○ 848 | ○ 849 | $ |
| | MidCap Fund | ○ 745 | ○ 746 | ○ 747 | $ |
| | Quest Capital Value Fund, Inc. | ○ 835 | ○ 836 | ○ 837 | $ |
| | Quest Value Fund, Inc. | ○ 225 | ○ 226 | ○ 227 | $ |
| | Small Cap Value Fund | ○ 251 | ○ 252 | ○ 253 | $ |
| | Value Fund | ○ 375 | ○ 376 | ○ 377 | $ |
| Stock & Bond Funds | Capital Income Fund | ○ 300 | ○ 301 | ○ 302 | $ |
| | Convertible Securities Fund | ○ 345 | ○ 346 | ○ 347 | $ |
| | Disciplined Allocation Fund | ○ 205 | ○ 206 | ○ 207 | $ |
| | Equity Fund, Inc. | ○ 420 | ○ 421 | ○ 422 | $ |
| | Multiple Strategies Fund | ○ 240 | ○ 241 | ○ 242 | $ |
| | Quest Balanced Value Fund | ○ 257 | ○ 258 | ○ 259 | $ |
| | Quest Opportunity Value Fund | ○ 236 | ○ 237 | ○ 238 | $ |
| Specialty Funds | Gold & Special Minerals Fund | ○ 410 | ○ 411 | ○ 412 | $ |
| | Real Asset Fund* | ○ 735 | ○ 736 | ○ 737 | $ |
| | Real Estate Fund | ○ 590 | ○ 591 | ○ 592 | $ |
| **Income Funds** | Bond Fund | ○ 285 ✔ | ○ 286 | ○ 287 | $ |
| Taxable Bond Funds | Champion Income Fund | ○ 190 ✔ | ○ 191 | ○ 192 | $ |
| | High Yield Fund | ○ 280 ✔ | ○ 281 | ○ 282 | $ |
| | International Bond Fund | ○ 880 ✔ | ○ 881 | ○ 882 | $ |
| | Limited-Term Government Fund | ○ 855 ✔ | ○ 856 | ○ 857 | $ |
| | Senior Floating Rate Fund[1] | — | ○ 292 | ○ 293 | $ |
| | Strategic Income Fund | ○ 230 ✔ | ○ 231 | ○ 232 | $ |
| | Total Return Bond Fund[2] | ○ 535 ✔ | ○ 536 | ○ 537 | $ |
| | U.S. Government Trust | ○ 220 ✔ | ○ 221 | ○ 222 | $ |
| Municipal Bond Funds | AMT-Free New York Municipals[3] | ○ 360 ✔ | ○ 361 | ○ 362 | $ |
| | California Municipal Fund[3] | ○ 790 ✔ | ○ 791 | ○ 792 | $ |
| | Limited Term Municipal Fund | ○ 860 ✔ | ○ 861 | ○ 862 | $ |
| | Municipal Bond Fund | ○ 310 ✔ | ○ 311 | ○ 312 | $ |
| | New Jersey Municipal Fund[3] | ○ 395 ✔ | ○ 396 | ○ 397 | $ |
| Rochester Division | Limited Term New York Municipal Fund | ○ 355 ✔ | ○ 358 | ○ 357 | $ |
| | Pennsylvania Municipal Fund[3] | ○ 740 ✔ | ○ 741 | ○ 742 | $ |
| | Rochester Fund Municipals | ○ 365 ✔ | ○ 366 | ○ 367 | $ |
| | Rochester National Municipals | ○ 795 ✔ | ○ 796 | ○ 797 | $ 10,000 |
| **Money Market Funds[4]** | Cash Reserves | ○ 760 ✔ | ○ 761[5] | — | $ |
| | Money Market Fund, Inc. | ○ 200 ✔ | — | — | $ |
| **Other** | Fund name: | ○ | ○ | ○ | $ |
| | | | | **Total** | $ 10,000 |

✔ Checkwriting available.
**Please refer to page 8 for recent fund name changes.**
1. Class A shares of this Fund are not available for direct purchase. Please refer to your prospectus for certain account limitations.

2. It is important to note that Oppenheimer Total Return Bond Fund is a new fund with limited operating history.
3. Available to investors only in certain states.
4. An investment in money market funds is neither insured nor guaranteed by the U.S. Government and there can be

no assurance that a money market fund will be able to maintain a stable net asset value of $1.00 per share.
5. Purchases into this fund must be accompanied by the Cash Reserves Class B Asset Builder form for dollar cost averaging. If the form is not included, your request will not be processed.

4

# REDACTED

## 5 Account options

REDACTED

## A. Dividend and capital gains options

Tell us what to do with your dividends and capital gains distributions.

If you're investing in more than one fund, the option you select will apply to all funds.

All dividends and capital gains will be reinvested in the same fund that paid them unless you select alternative options below.

**Dividends and short-term capital gains (select one)**
- ⦿ Reinvest in the same fund that paid them
- ◯ Pay by check to my mailing address
- ◯ Deposit electronically to my bank account (**please attach a voided check or preprinted deposit slip below**)

**Long-term capital gains (select one)**
- ⦿ Reinvest in the same fund that paid them
- ◯ Pay by check to my mailing address
- ◯ Deposit electronically to my bank account (**please attach a voided check or preprinted deposit slip below**)

## B. AccountLink

At your request, we can transfer funds to and from your bank account.

If you would like the AccountLink option, **attach a voided check or preprinted deposit slip below.** Please also see the information on *Bank Account Authorized Signers* on page 6.

## C. Asset Builder plan

The Asset Builder plan allows you to buy shares automatically in your OppenheimerFunds accounts.

Such plans do not assure a profit or protect against losses in declining markets.

Here's how Asset Builder works:
- A minimum initial investment of $500 per fund is required to establish a new Asset Builder account
- The minimum periodic Asset Builder investment per fund is $50
- The amount of your periodic investment will be withdrawn from your bank account on the 20th of the month unless you indicate a different start date below. The start date you indicate will be used for each periodic withdrawal
- Your bank account will be debited on the start date you selected or the next business day following a weekend or holiday. If you select the 31st day of the month, we'll debit your account on the last business day of the month
- **Attach a voided check or preprinted deposit slip for the bank account you wish to debit below.** Please also see the information on *Bank Account Authorized Signers* on page 6
- You can set up multiple Asset Builder plans below. However, each Asset Builder must be drafted from the same bank account

Please allow 10 days for us to make the initial Asset Builder debit from your bank account.

If you want to cancel this service, please give us at least 15 days notice in writing or by phone.

| Oppenheimer fund or account number—1 | | Oppenheimer fund or account number—2 | |
|---|---|---|---|
| $ | | $ | |
| Amount of your periodic investment | Start date (mm/dd/yyyy) | Amount of your periodic investment | Start date (mm/dd/yyyy) |
| ◯ monthly  ◯ quarterly  ◯ semiannually  ◯ annually | | ◯ monthly  ◯ quarterly  ◯ semiannually  ◯ annually | |
| Frequency | | Frequency | |

## Bank Account Information
(For AccountLink, Asset Builder or electronic dividend option)

Indicate account type:
◯ Checking      ◯ Savings

**Tape preprinted, voided check or preprinted deposit slip here. Don't use staples.**

You must provide a check or preprinted deposit slip if you are requesting Asset Builder or AccountLink or have asked for any distributions to be paid to your bank account.

Jim A Sample
123 Name Street
Anywhere, USA12345

1-23/456

Pay to the
order of _____ $ _____

_____ Dollars

**VOID**

Noname Bank USA

For _____      VOID _____

⑈00001⑆:23456789⑆:0123456789012⑈

## Bank Account Authorized Signers

(For AccountLink, Asset Builder or electronic dividend option)

**Signatures are required only when:**

· Your OppenheimerFunds account or accounts and the bank account for which you have attached a voided check or deposit slip do not have the same joint owners. In this case, all owners of the bank account must sign

X_____

Signature                                                      Date (mm/dd/yyyy)            Title (if the account is held by a trust)

X_____

Signature                                                      Date (mm/dd/yyyy)            Title (if the account is held by a trust)

## D. Reduced sales charge on Class A shares

You may be able to reduce the sales charges you pay on Class A shares if you agree to invest a certain amount or if you already own Class A or Class B shares of another Oppenheimer fund.

**Letter of Intent**

To sign a Letter of Intent, please read the appropriate prospectus for terms and conditions. Please indicate the total amount you intend to invest over the next 13 months:

○ $25,000    ○ $50,000    ○ $100,000    ○ $250,000    ○ $500,000    ○ $1,000,000 or more.

**Right of Accumulation**

If you, your spouse or your minor children already own Class A or Class B shares of another Oppenheimer fund, provide your account numbers in the space below and we'll reduce sales charges for you if you're eligible.

_____

Account numbers

## E. Checkwriting

Checkwriting is available on Class A shares of the Income Funds and Money Market Funds listed on page 4 with a check mark (✔). **Please allow 30 days for the delivery of your checks.**

Please indicate below if you want checkwriting. You can write checks for a minimum of $500.

○ Checkwriting for fund: _____
                                            Fund name

**Joint account owners**

○ Indicate if only one joint owner's signature is required on checks.
   (We require all joint owners signatures unless this option is selected.)

**Trust accounts, corporations or other entities**

Only one signature is required unless you indicate otherwise.

○ Indicate number of signers: _____

## F. Telephone and Internet transaction privileges

Please indicate if you do not want telephone and Internet privileges.

Both you and your financial advisor can redeem or exchange shares by phone and Internet. This authorization will remain in effect until OppenheimerFunds receives written instructions to change it. The instructions must be signed by all shareholders and we must have a reasonable time to act on them.

○ I do not want to have telephone and          ○ I do not want my financial advisor to have
   Internet transaction privileges myself            telephone and Internet transaction privileges

If you don't select one of these options:

· You acknowledge that your account or accounts will be subject to the telephone and Internet exchange and redemption privileges described in the Fund's current prospectus and Statement of Additional Information

· You agree that the fund, its distributor and transfer agent will not be liable for any loss in acting on transaction instructions via telephone or Internet that they reasonably believe to be authentic

## G. Email address and eDocs Direct℠

Supply your email address to receive valuable information about registering for our website. You will also learn more about receiving electronic delivery of fund documents.

Please provide your email address below:

_____

Email address

Government regulations require that we send you annual and semiannual reports, prospectuses, prospectus supplements and other fund documents. If you would like to learn more about receiving these documents electronically rather than by U.S. mail, provide your email address above. We'll send you an email about our free electronic delivery service, eDocs Direct,℠ telling you how to enroll.

**REDACTED**

| 6 | Signatures | |
|---|---|---|

**REDACTED**

Please review the following information in this section carefully and sign in Section 6B below.

By signing this form in Section 6B, below, I certify that:

- I am of legal age and capacity and am authorized to purchase shares
- I have read the current prospectus and can request the Statement of Additional Information of each fund that I'm investing in and agree to be bound by their terms and conditions
- I am responsible for reading the prospectus and Statement of Additional Information of any fund into which I exchange
- If I exchange all shares into a new fund, all account options I have chosen on this application will apply
- If other members of my family have shares in the same Oppenheimer fund that I own, I agree that OppenheimerFunds may send a single copy to my household of that fund's updated prospectus, annual report, semiannual report or other information that is required to be delivered. If I wish to receive a separate copy of these materials, I agree to tell OppenheimerFunds by phone, in writing or by email
- I acknowledge that OppenheimerFunds Services will use this document, trust agreement or other similar documents solely for the purpose of verifying the identity of the registered owners as required by federal law. I understand that OppenheimerFunds Services does not assume any responsibility for monitoring, maintaining, interpreting or enforcing any terms or provisions of these documents

My signature also means that I agree to and accept all terms, conditions and features selected throughout this application form.

**A. Substitute Form W-9**

I certify under penalties of perjury that:

1. The number shown on this application is my correct Taxpayer Identification Number, **and**

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, **and**

3. I am a U.S. person or a U.S. resident alien.

You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications above to avoid backup withholding.

**B. Signatures**

All owners must sign this application.

X _____ 05-18-05 _____ Title (if the account is held by a trust, corporation or other entity)
Signature          Date (mm/dd/yyyy)

X _Ann M. Cooper_ 05-18-05 _____ Title (if the account is held by a trust, corporation or other entity)
Signature          Date (mm/dd/yyyy)

X _____ _____ _____ Title (if the account is held by a trust, corporation or other entity)
Signature          Date (mm/dd/yyyy)

X _____ _____ _____ Title (if the account is held by a trust, corporation or other entity)
Signature          Date (mm/dd/yyyy)

**Please review the important information on page 8.**

---

**Before mailing your application, please check the following:**

☐ Did you provide the name, residential address, date of birth and Social Security Number or Tax Identification Number for everyone listed on the account in Section 2?

☐ In Section 4, did you check the class of shares—A, B or C—for the fund or funds you want to invest in and show the amount of your investment in each fund?

☐ Did you provide your email address in Section 5 so we can email you information about eDocs Direct℠ and the electronic delivery of fund documents?

☐ Did you include additional signatures for your bank account in Section 5, if applicable?

☐ If any options selected require bank information, did you attach a preprinted voided check for your checking account or a preprinted deposit slip for your savings account?

☐ Did you remember to enclose your check made payable to OppenheimerFunds Distributor, Inc.?

☐ Did you provide all required signatures in Section 6?

---

**Recent fund name changes**

- Oppenheimer Global Growth & Income Fund was renamed Oppenheimer Global Opportunities Fund on 6/1/03

- Oppenheimer Quest Global Value Fund, Inc.℠ was renamed Oppenheimer Quest International Value Fund, Inc.℠ on 8/29/03

- Oppenheimer Main Street Growth & Income Fund* was renamed Oppenheimer Main Street Fund* on 4/30/03

- Oppenheimer Total Return Fund, Inc. was renamed Oppenheimer Equity Fund, Inc. on 8/29/03